1  Beth E. Terrell, WSBA #26759
   Blythe H. Chandler, WSBA #43387
2  Attorneys for Plaintiffs
   TERRELL MARSHALL LAW GROUP PLLC
3  936 North 34th Street, Suite 300
   Seattle, Washington  98103-8869
4  Telephone:  (206) 816-6603
   Facsimile:  (206) 319-5450
5  Email:  bterrell@terrellmarshall.com
   Email:  bchandler@terrellmarshall.com
6
   [Additional Counsel Appear on Signature Page]
7

8              UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF WASHINGTON
9

10 RANCHERS-CATTLEMEN ACTION
   LEGAL FUND, UNITED
11 STOCKGROWERS OF AMERICA and
   CATTLE PRODUCERS OF
12 WASHINGTON,

13                        Plaintiffs,

14        v.

15 UNITED STATES DEPARTMENT OF
   AGRICULTURE and SONNY
16 PERDUE, in his official capacity as
   Secretary of Agriculture,
17
                         Defendants.
18

NO.

**COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS**

19        1.      Domestic ranchers and farmers like Jeff Scmidt, David Niemi, and

20 Lorene Bonds produce premium beef and pork, for which many consumers will

21 COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
   AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
   OF UNITED STATES MEAT LABELING REGULATIONS - 1

pay a premium price.  Many Americans will pay more to feed themselves and their families meat that comes from livestock born, raised, and slaughtered in the United States.  But current regulations permit meat from cattle and hogs born, raised, and slaughtered in other countries to be passed off as domestic products, harming United States ranchers, farmers, and consumers.

2.     This is a challenge to the United States Department of Agriculture's ("USDA's") March 2016 decision to revoke regulations requiring that beef and pork products be labeled with their country of origin.  USDA's decision reinstated regulations that reclassify imported beef and pork as domestic goods, enabling that meat to be passed off as a United States product.  *See* 9 C.F.R. § 327.18(a).

3.     From 2009 into 2016, USDA required that beef and pork be labeled so that consumers buying those goods at retail could determine the meat's country of origin.  Those regulations not only provided purchasers desirable information and enabled an open, competitive market among producers, but also corrected—what USDA acknowledged was—a decades-long conflict between the Meat Inspection Act's statutory text (which mandates such labels in certain circumstances) and the agency's Meat Inspection Act regulations (which had not required such labeling). *See* 21 U.S.C. § 601 *et seq.*

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 2

4.     However, in 2016, acting on a bill that removed *other* country-of-origin labeling requirements, USDA removed the regulations that had brought its application of the Meat Inspection Act into compliance with the statutory text.

5.     The agency reinstituted its prior rules, allowing beef and pork from animals slaughtered abroad to be reclassified as domestic goods, despite the fact that the agency had previously recognized those rules conflicted with the Meat Inspection Act's text.

6.     Thus, USDA's current regulations regarding the country-of-origin labeling for imported beef and pork are unlawful.  *See*, *e.g.*, *N.L.R.B. v. Brown*, 380 U.S. 278, 291-92 (1965) ("Reviewing courts are not obliged to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute.  Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions."); *Resident Councils of Wash. v. Leavitt,* 500 F.3d 1025, 1030 (9th Cir. 2007) ("When reviewing an agency's construction of a statute it is charged with administering, we first look to the statutory text to see whether Congress has spoken directly to the question at hand.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." (quoting *Contract*

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 3

*Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1146-47 (9th Cir. 2006), in turn quoting

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)

(quotation marks omitted)); 5 U.S.C. § 706(2)(A) ("The reviewing court shall …

hold unlawful and set aside agency action, findings, and conclusions found to be

… not in accordance with law[.]").

7.    The regulations should be declared unlawful, vacated, and enjoined.

## I.  SUMMARY

8.    The Meat Inspection Act requires that imported meat from animals

slaughtered abroad (as opposed to livestock), including beef and pork, that is

"capable of use as human food … be marked and labeled as required by such

regulations for imported articles."  21 U.S.C. § 620(a).

9.    The Tariff Act of 1930 requires imported beef and pork to be marked

or labeled with its country of origin all the way to "an ultimate purchaser in the

United States."  19 U.S.C. § 1304(a).

10.    Based on the Meat Inspection Act's plain text, Congress' unequivocal

direction is that USDA should enforce the Tariff Act's country-of-origin labeling

requirements for imported beef and pork.

11.    Yet, instead, USDA's Meat Inspection Act regulations *reclassify*

imported meat as a domestic good, so it does *not* need to bear any marks or labels

identifying its country of origin.  9 C.F.R. § 327.18(a).

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 4

12.     In fact, USDA allows such products to be labeled as "Product[s] of [the] U.S.A." even though the animals were born, raised, slaughtered, and butchered elsewhere.[1]

13.     USDA promulgated rules under the Meat Inspection Act that accomplish the exact opposite of what the authorizing statute requires.

14.     For a brief period, USDA acknowledged and corrected its unlawful regulations.

15.     The 2002 Farm Bill directed USDA to ensure consumers be provided "additional information on which to base their purchasing decisions," particularly information regarding a good's country of origin.  Mandatory Country of Origin Labeling of Beef, Pork, Lamb, Chicken, Goat Meat, Perishable Agricultural Commodities, Peanuts, Pecans, Ginseng, and Macadamia Nuts, 73 Fed. Reg. 45106, 45109, 45140 (Aug. 1, 2008).

16.     For beef and pork products, the 2002 Farm Bill had the primary effect of requiring country-of-origin labeling on goods derived from imported livestock (as opposed to imported beef and pork).  *See* Joel L. Greene, Cong. Research Serv.,

---

[1] USDA, *Food Standards and Labeling Policy Book* 155-56(Aug. 2005), https://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 5

1    *Country-of-Origin Labeling for Foods and the WTO Trade Dispute on Meat*

2    *Labeling*, 30-31 (Mar. 8, 2016) (Exhibit A).

3         17.    However, USDA took this as an opportunity to bring its labeling

4    requirements for imported beef and pork into line with the Meat Inspection Act.

5    Mandatory Country of Origin Labeling of Beef, Lamb, Pork, Fish, Perishable

6    Agricultural Commodities, and Peanuts, 68 Fed. Reg. 61944, 61948-49 (Oct. 30,

7    2003).

8         18.    In 2009, USDA promulgated final rules that required beef, pork, and

9    other commodities "slaughtered in another country [to] retain their origin, as

10   declared to U.S. Customs and Border Protection [("U.S. Customs")] at the time the

11   product entered the United States, through retail sale."  7 C.F.R. § 65.300(f)(2)

12   (2009); *see also* 7 C.F.R. § 65.135(a) (2009).

13        19.    In other words, the regulations issued following the 2002 Farm Bill

14   overrode the Meat Inspection Act's rules and created a new, superseding

15   requirement:  Country-of-origin labels had to remain on imported beef and pork

16   through the goods' sale to consumers.  This resolved the conflict between the Meat

17   Inspection Act's regulations and the statute's text.

18        20.    However, the World Trade Organization ("WTO") subsequently

19   authorized Canada and Mexico to impose sanctions against the United States

20   because the WTO concluded the labeling requirements related to goods derived

21   COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
     AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
     OF UNITED STATES MEAT LABELING REGULATIONS - 6

1    from imported *livestock* improperly disadvantaged the sale of imported *live* cattle

2    and hogs.  Greene, *supra*, at i-ii.

3       21.    The WTO did not call into question the marks or labels required by

4    the Tariff Act for imported beef and pork.  *Id.* at 42-45.

5       22.    In response, Congress removed cattle, hogs, beef, and pork from the

6    list of items that required country-of-origin labels under the 2002 Farm Bill.

7    Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 759, 129 Stat.

8    2242, 2284-85 (2016).

9       23.    Congress made no alterations to the requirements of the Meat

10   Inspection Act or the Tariff Act.  *See id.*

11      24.    Yet, USDA declared that *all* beef and pork products would no longer

12   be covered by its regulations issued following the 2002 Farm Bill.  Removal of

13   Mandatory Country of Origin Labeling Requirements for Beef and Pork Muscle

14   Cuts, Ground Beef, and Ground Pork, 81 Fed. Reg. 10755 (Mar. 2, 2016).

15      25.    Rather than act with precision and respond to the WTO's and

16   Congress' concerns in a way that also complied with preexisting laws, USDA used

17   a broad brush and deleted beef and pork from its labeling requirements, despite

18   USDA's prior acknowledgement that country-of-origin labeling was required not

19   only by the 2002 Farm Bill, but also by the Meat Inspection Act.

20

21   COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
     AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
     OF UNITED STATES MEAT LABELING REGULATIONS - 7

26.    Through final agency action terminating the regulations covering imported beef and pork that it had issued following the 2002 Farm Bill, USDA reinstated its prior scheme for imported beef and pork.  As of 2016, USDA is again permitting the sale of beef and pork from animals slaughtered in other countries with the same labels as domestic meat (imported beef and pork can even be labeled a "Product of U.S.A."), duping consumers.  Thus, USDA's regulations once again conflict with the Meat Inspection Act's text.

27.    USDA's action harms domestic consumers and producers.

28.    A 2016 Consumer Reports survey found that 60% of consumers want food labels to tell them if their meat is from livestock born *or* raised outside the United States.

29.    In 2015, Consumer Reports stated that its "surveys have consistently shown that more than 90 percent of consumers would prefer to have a country-of-origin label on the meat they buy."  Consumer Reports, *Don't repeal country-of-origin labeling on food* (June 12, 2015), http://www.consumerreports.org/cro/news/2015/06/dont-repeal-country-of-origin-labeling-on-food/index.htm.

30.    A 2013 study conducted by the Consumer Federation of America similarly found that 90% of consumers want country-of-origin labeling on "fresh meat" sold by "food sellers."  Consumer Federation of America, *Large Majority of*

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 8

*Americas Strongly Support Requiring More Information on Origin of Food Meat* (May 15, 2013), http://consumerfed.org/press_release/new-poll-shows-strong-support-for-usdas-approach-to-resolving-country-of-origin-labeling-dispute/.

31.    Nonetheless, in 2016, USDA's unlawful regulations provided for around 887,000,000 pounds of imported fresh beef to be passed off to consumers as homegrown products.  This figure does not include the massive amounts of imported, fresh pork, and imported, processed beef and pork, which USDA's rules also allow to be treated as domestic products, despite the fact that our trade laws (*e.g.*, the Tariff Act) require that such goods bear country-of-origin labels through their retail sale.

32.    As a result, United States cattle and hog producers received less income because the domestic market was flooded with foreign goods that could be passed off as having been produced in the United States, decreasing the demand for true, domestically produced goods.

33.    For these reasons this Court should:

a.    Declare USDA's current marking or labeling requirements for imported beef and pork unlawful because they fail to require that the meat "be marked or labeled as required by such regulations for imported articles," 21 U.S.C. § 620(a);

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 9

b.      Vacate USDA's current marking or labeling requirements for imported beef and pork because they fail to require that the meat "be marked and labeled as required by such regulations for imported articles," 21 U.S.C. § 620(a); and

c.      Issue an injunction prohibiting USDA from authorizing marks or labels on imported beef and pork that are inconsistent with the Tariff Act.  *See* 5 U.S.C. § 703.

## II.  JURISDICTION AND VENUE

34.    This complaint concerns the 2016 final USDA action that terminated that agency's regulations requiring country-of-origin labeling for beef and pork. Those regulations had corrected the conflict between the text of the Meat Inspection Act and the USDA regulations implementing that Act.  The 2016 final agency action reinstated that conflict between the statute and regulations.  Removal of Mandatory Country of Origin Labeling Requirements for Beef and Pork Muscle Cuts, Ground Beef, and Ground Pork, 81 Fed. Reg. 10755 (Mar. 2, 2016). Therefore, this suit is timely under 28 U.S.C. § 2401(a).

35.    This complaint concerns an unlawful, final federal agency action for which there is no other adequate remedy.  It thus arises under the laws of the United States and this Court has jurisdiction under 5 U.S.C. § 704 and 28 U.S.C. § 1331.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 10

36.    There is no requirement that this complaint first be brought before the agency.

37.    USDA declared that "[t]here are no administrative procedures that must be exhausted prior to any judicial challenge to the provisions of" its decision to reinstate the unlawful Meat Inspection Act regulations.  Removal of Mandatory Country of Origin Labeling Requirements for Beef and Pork Muscle Cuts, Ground Beef, and Ground Pork, 81 Fed. Reg. at 10760.  In fact, USDA did not even provide the public an opportunity to comment before or after its 2016 final agency action.  *Id.*

38.    Further, this suit falls within an exception to the exhaustion requirement because it alleges the regulations are facially inconsistent with the authorizing statute, a charge that does not require and would not benefit from the agency's expertise.

39.    This Court has the authority to grant the relief requested pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as well as the Court's inherent equitable powers.

40.    Venue is proper in the United States District Court for the Eastern District of Washington pursuant to 28 U.S.C. § 1391(e)(1).  *See also* 5 U.S.C. § 703.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 11

# III.  PARTIES

**A.    Plaintiff the Ranchers-Cattlemen Action Legal Fund.**

41.    Plaintiff the Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of America ("R-CALF") is a nonprofit, membership-based organization.  It is the largest trade organization in the United States whose voting members are exclusively composed of independent cattle producers.  Its voting members are located in 43 states and include 62 cattle producers in Washington State.  All of its voting members pay dues and have equal voting rights in electing R-CALF's directors and setting R-CALF's policies.

42.    R-CALF's mission focuses on ensuring the continued profitability and viability of independent cattle producers.  This primarily involves advocating for independent, United States cattle producers in trade and marketing policies.  Among the trade and marketing issues that most threaten R-CALF's members are policies that treat all beef as equal or that fail to distinguish between where and how beef is produced.  These policies undermine domestic producers' ability to demand a premium price for their premium products.

43.    R-CALF has engaged in extensive federal advocacy regarding USDA's country-of-origin labeling requirements (or lack thereof).  It submitted comments to both Congress and USDA regarding the 2002 Farm Bill and its implementing regulations.  It also submitted comments to USDA and the Office of

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 12

the United States Trade Representative in defense of the rules the agency promulgated and in support of the United States challenging the WTO's determination that the country-of-origin labeling regulations related to livestock were overly burdensome. R-CALF even joined suits seeking to defend country-of-origin labeling and challenging WTO's authority to issue its ruling.

44. In its comments, R-CALF explained that the Meat Inspection Act, which requires enforcement of the Tariff Act, independently requires country-of-origin labeling and that USDA must effectuate that requirement regardless of the 2002 Farm Bill and the WTO's decision. R-CALF's regulatory comments and other submissions also noted the clash between the marks or labels required by the Meat Inspection Act and its implementing regulations that allowed imported beef to be treated as a domestic good.

45. R-CALF has expended a substantial amount of its limited resources to promote country-of-origin labeling for beef. In addition to drafting the comments and engaging in litigation, it has educated politicians about the need for country-of-origin labeling and has publicized its views, including through presentations, social media posts, and traditional press contacts.

46. In 2017, R-CALF supported legislation in Colorado, Wyoming, and South Dakota that would have required retailers to identify the country-of-origin of beef sold in those states, in order to aid domestic cattle producers who face falling

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 13

prices.  Those bills were defeated at the behest of multinational meat packing companies that import beef to the United States and sell it to unsuspecting consumers who are unable to differentiate between domestic and foreign goods.

47.    Had USDA lawfully implemented the Meat Inspection Act's requirements, R-CALF would have focused more of its efforts on addressing other trade and policy issues that harm domestic producers—such as the federal Beef Checkoff program.

48.    Further still, R-CALF's members are injured by USDA's current implementation of the Meat Inspection Act.  R-CALF members—including, for instance, David Niemi and Lorene Bonds—earn higher profits when they sell their products directly to consumers rather than to meat packers, because they can demand a higher price for goods they can promote as coming exclusively from domestic producers and cattle.  When the country-of-origin regulations were put in place following the 2002 Farm Bill, however, those members and others received increased payments from the meat packers, because the packers could no longer pass off foreign meat as if it were a domestic good; thus there was increased demand and the meat packers too had to pay a premium for R-CALF's members' domestic goods.[2]  With USDA no longer requiring country-of-origin marks or

---

[2] *See*, *e.g.*, Wendy J. Umberger, Dillon M. Feuz, Chris R. Calkins, & Bethany M. Sitz, *Country of Origin Labeling of Beef Products: U.S. Consumers' Perceptions*,

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 14

labels on imported beef, R-CALF's members' payments from the packers have fallen.  Based on information they have been provided, R-CALF's members expect those payments would increase again if the packers were required to label imported beef products with their country of origin.

49.    In sum, both R-CALF and its members are harmed by USDA's unlawful implementation of the Meat Inspection Act.

**B.    Plaintiff Cattle Producers of Washington.**

50.    Plaintiff Cattle Producers of Washington ("CPoW") is a Washington State nonprofit, membership organization dedicated to advancing the interests of Washington State cattle producers.  It has 35 dues-paying, voting Members in Washington State, who determine the policies and directors of the organization.

51.    CPoW also works closely with the Stevens and Spokane County Cattleman's Associations to coordinate the organizations' efforts.  The Stevens and Spokane County Cattleman's Associations are Washington State organizations that work with and build support for CPoW's state-wide, regional, and national efforts.

---

34 J. of Food Dist. Res. 103 (2003), http://ageconsearch.umn.edu/bitstream/27050/1/34030103.pdf.  (consumers "were willing to pay an 11% to 24% premium for [country of origin labeling] of steak and hamburger, respectively").

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 15

52.    CPoW's goals include restoring the prosperity of rural Washington by advancing the interests of domestic farmers, as opposed to multinational corporations.  CPoW and its members believe that cattle producers in Washington raise the safest, most wholesome product under the strictest health standards in the world.  Accordingly, CPoW actively opposes trade policies that hinder Washington cattle producers' ability to promote their product as uniquely desirable.

53.    As a result, CPoW has consistently expended its limited resources to promote country-of-origin labeling on beef products.  Without country-of-origin labeling, the major meat packers, who control nearly all of the domestic market for beef, are able to label all of their products similarly and thus pass off foreign meat as domestic.

54.    This injures consumers and domestic producers, including CPoW's members.

55.    CPoW's members who sell their cattle to meat packers are unable to secure a premium price for their premium product, but rather must accept a lower price that reflects the fact that their products will be sold alongside (and as indistinguishable from) cheaper, less desirable, foreign beef.  The absence of country-of-origin labeling decreases CPoW's members' income.

56.    For instance, Jeff Scmidt sells beef to both consumers and meat packers.  When he sells meat directly to consumers and is able to promote it as

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 16

entirely domestically born, raised, and slaughtered he receives substantially more profit than when he sells his cattle to meat packers who indiscriminately mix foreign and domestic meat. When USDA required country-of-origin labeling, Jeff Scmidt was able to secure a substantially higher price from meat packers because the packers were required to inform consumers about the distinction in their supplies, and thus there was an increased demand for domestic beef. Since USDA revoked its country-of-origin labeling requirements, Jeff Scmidt has again received lower returns and profits from selling cattle to multinational meat packers.

57. Recognizing the value of accurate country-of-origin labeling (for both producers and consumers), CPoW and its members helped finance and build an independent slaughterhouse in Washington State. This allows CPoW's members to sell more meat directly to consumers. Therefore CPoW's members are not entirely beholden to the meat packers who will only compensate domestic producers for beef as if it is equivalent to the foreign products that the packers promote as indistinguishable from domestic goods.

58. CPoW opposed USDA's decision to abandon its country-of-origin labeling requirements. For instance, following the WTO decision, CPoW organized an auction to help finance the drafting of regulatory comments calling on USDA to maintain as much of its country-of-origin labeling requirements as possible. CPoW has also spent its limited staff time developing and promoting

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 17

1  articles and social media posts to inform its members of developments in country-

2  of-origin labeling.

3       59.    If USDA required more beef to be labeled with its country of origin,

4  CPoW would expend fewer resources on this issue and instead direct those

5  resources to other issues it believes promote its members' interests.

6       60.    Further, the meat packers would not be able to flood the market with

7  the same volume of foreign product—as informed consumers would purchase

8  fewer foreign goods, favoring domestic meat—meaning CPoW's members would

9  be able to demand a higher price for their premium, domestic product.

10      61.    Both CPoW and its members have been and are harmed by USDA's

11  failure to properly implement the Meat Inspection Act and require certain beef

12  products to be labeled with their country of origin.

13  **C.    Defendants.**

14      62.    Defendant USDA is the agency charged with administering and

15  issuing regulations related to the Meat Inspection Act, the 2002 Farm Bill, and

16  Congress' response to the WTO's rulings against the 2002 Farm Bill's country-of-

17  origin labeling requirements for imported cattle and hogs.

18      63.    Defendant Secretary of Agriculture Sonny Perdue, sued in his official

19  capacity, is the federal official charged with overseeing USDA and all of its

20  agency actions.

21  COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 18

# IV.  FACTS

**A.    The Meat Inspection Act plainly mandates that imported meat comply with the marks or labels required by United States trade laws, including that imported meat be marked with its country of origin.**

(i)    *Statutory text.*

64.    The text of the Meat Inspection Act, 21 U.S.C. § 620(a), is clear.  It states in full:  "No carcasses, parts of carcasses, meat or meat food products of cattle, sheep, swine, goats, horses, mules, or other equines which are capable of use as human food, shall be imported into the United States if such articles are adulterated or misbranded and unless they comply with all the inspection, building, construction standards, and all other provisions of this chapter and regulations issued thereunder applicable to such articles in commerce within the United States.  No such carcasses, parts of carcasses, meat or meat food products shall be imported into the United States unless the livestock from which they were produced was slaughtered and handled in connection with slaughter in accordance with the Act of August 27, 1958 (72 Stat. 862; 7 U.S.C. 1901-1906).  All such imported articles shall, upon entry into the United States, be deemed and treated as domestic articles subject to the other provisions of this chapter and the Federal Food, Drug, and Cosmetic Act [21 U.S.C.A. § 301 et seq.]:  *Provided*, That they shall be marked and labeled as required by such regulations for imported articles:  *Provided further*, That nothing in this section shall apply to any individual who purchases meat or meat products outside the United States for his own

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 19

consumption except that the total amount of such meat or meat products shall not exceed fifty pounds."  21 U.S.C. § 620(a) (emphasis added) (brackets in original).

65.    21 U.S.C. § 620(a) provides that imported beef and pork can be sold domestically *only if* the foreign products comply with the Tariff Act's marking or labeling requirements for imported goods.

66.    The Tariff Act provides that "Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article."  19 U.S.C. § 1304(a).

67.    The "'ultimate purchaser' is generally the last person in the United States who will receive the article in the form in which it was imported," *i.e.*, the consumer.  19 C.F.R. § 134.1(d).

68.    The only circumstance in which a domestic reseller, rather than a consumer, will be considered the "ultimate purchaser" is if the reseller subjects the imported good to a "substantial transformation."  *Id*.  A domestic reseller that subjects an imported good to a "minor" manufacturing process where "the identity of the imported article [remains] intact" must still ensure the marks or labels required by the Tariff Act make their way to "the consumer who purchases the

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 20

article after processing," as the consumer "will be regarded as the 'ultimate purchaser.'" *Id.*

69.    The Meat Inspection Act requires that all covered meat products comply with the "regulations for imported articles," including the Tariff Act's mandate that imported beef and pork be labeled with their country of origin all the way through sale to the consumer.

(ii)    *Legislative history.*

70.    The Wholesome Meat Act, Pub. L. No. 90-201, 81. Stat. 584, 589 (1967), rewrote several prior meat-related statutes to create the modern Meat Inspection Act.  The language in 21 U.S.C. § 620(a) was primarily enacted by § 10 of the Wholesome Meat Act.

71.    The Wholesome Meat Act's legislative history reinforces that the Meat Inspection Act requires USDA to enforce all existing trade rules governing the labeling of imported beef and pork, particularly those that provide for marks or labels that enable United States consumers to differentiate between foreign and domestic goods.

72.    For instance, the House of Representatives Report on the bill explains that the House defeated an amendment that would have "require[d] foreign meat and meat food products to be honestly labeled as such so that American consumers

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 21

could know that their purchase was of foreign origin." H.R. Rep. No. 90-653, at 69 (1967).

73.   The Report explains the amendment was rejected, in part, because "[t]he Tariff Act of 1930, as amended already provides for the labeling of imported meats." *Id.* at 70 (quotations marks omitted).

74.   Put another way, central to the Wholesome Meat Act's construction and passage was Congress' understanding that the Meat Inspection Act would carry forward all existing marking or labeling requirements for imported meat, particularly those in the Tariff Act that allow consumers to differentiate between foreign and domestic goods.

**B.   USDA's Meat Inspection Act regulations fail to enforce the statute's requirement that imported products must comply with the marks or labels mandated by United States trade laws.**

75.   USDA's Meat Inspection Act regulations fail to incorporate the Meat Inspection Act's requirement that covered meat must comply with all of the United States' marking or labeling laws for imported goods.

76.   Instead, the USDA Meat Inspection Act regulations provide that once imported, all foreign meat that otherwise complies with the Meat Inspection Act and Federal, Food, Drug and Cosmetic Act is *exempted* from complying with United States trade laws, even if those laws would have required that meat to continue to be marked or labeled as an import.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 22

77.     Specifically, 9 C.F.R. § 327.18(a) provides in full:  "<u>All products,</u> <u>after entry into the United States, shall be deemed and treated as domestic products</u> and shall be subject to the applicable provisions of the Act and the regulations in this subchapter and the applicable requirements under the Federal Food, Drug and Cosmetic Act, except that products imported under § 327.16 are required to comply only with the requirements of that Act and § 327.16 of this subchapter." (emphasis added).

78.     Section 327.18(a) affirmatively reclassifies imported meat, including beef and pork, as a "domestic product," regardless of whether the meat would have been classified that way under United States trade laws.  Although the plain text of the Meat Inspection Act allows imported meat to be treated as a "domestic product" only if it *also* continues to comply with the marking or labeling requirements for imported goods, the regulations omit any requirement that imported meat bear the marks or labels required for imported goods. Section 327.18(a) unlawfully exempts imported meat from the Tariff Act's marking or labeling requirements.

79.     Under § 327.18(a) imported meat does not need to bear country-of-origin labels, allowing meat packers and other resellers to sell domestic and imported meat side by side without providing consumers any way to differentiate between the products.  In fact, under § 327.18(a), once meat is imported, domestic

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 23

resellers can *remove* labels from meat that had been required by United States trade laws. Section 327.18(a) destroys any assurances United States trade laws provided that purchasers will be able to identify where, and thus how, the meat they consume was produced.

80.     Section 327.18(a)'s exception for meat falling under 9 C.F.R. § 327.16 is inconsequential. Section 327.16 only concerns meat purchased "in a quantity of 50 pounds or less" for the importer's "own consumption." It does not concern any meat destined for the retail market.

81.     Two other Meat Inspection Act regulations, 9 C.F.R. § 327.14 and 9 C.F.R. § 327.15, provide that foreign meat must comply with the marks or labels required under United States trade laws when the meat is "offered for importation," *i.e.*, in order to cross the border. But, these provisions do not apply to foreign meat after it is imported. *See* 9 C.F.R. § 327.1(a).

82.     No other regulation implementing the Meat Inspection Act corrects § 327.18(a)'s effect of undermining United States trade rules that require the marking or labeling of imported goods.

83.     No provision of the Food, Drug and Cosmetic Act corrects § 327.18(a)'s effect of undermining United States trade rules that require the marking or labeling of imported goods.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 24

84.     Section 327.18(a) facilitates exactly what the text and history of the Meat Inspection Act establish Congress sought to avoid, allowing foreign meat, including beef and pork, to enter the United States market and avoid the rules that require foreign goods to be labeled with their country of origin.  USDA has created a system that undermines the law Congress enacted to defend United States producers, consumers, and products.

**C.   USDA had acknowledged and corrected the error in its Meat Inspection Act regulations, but, through final agency action, it recently reinstituted the rules above, renewing the conflict between the Meat Inspection Act's regulations and the authorizing statute.**

85.     The 2002 Farm Bill enacted a new law requiring that "a retailer of a covered commodity inform consumers, at the final point of sale of the covered commodity to consumers, of the country of origin of the covered commodity." Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, § 282, 116 Stat. 134, 534 (2002).

86.     Beef and pork, which were "covered commodities" under the 2002 Farm Bill, could only be classified as domestic goods if they were "exclusively from [] animal[s] that [were] exclusively born, raised, and slaughtered in the United States." *Id.*  Put another way, the 2002 Farm Bill was meant to expand the country-of-origin labels required by United States law, mandating that any meat products that came from an animal that spent any portion of its lifecycle abroad—

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 25

regardless of where the animal was slaughtered or processed—needed to be distinguished from true, domestically produced products.

87.    In the process of implementing the 2002 Farm Bill's directive, USDA acknowledged it did not need to merely expand its labeling requirements, but it also needed to reconcile the conflict between the Tariff Act and the agency's implementation of the Meat Inspection Act.  USDA explained that, "Currently, under the Tariff Act of 1930 … most imported items, including food items, are required to be marked to indicate the 'country of origin' to the 'ultimate purchaser.'  [U.S. Customs,] which administers the Tariff Act, generally defines 'ultimate purchaser' as the last person in the United States who will receive the article in the form in which it was imported[.]"  Mandatory Country of Origin Labeling of Beef, Lamb, Pork, Fish, Perishable Agricultural Commodities, and Peanuts, 68 Fed Reg. at 61948.  The Tariff Act provides that products produced abroad can only be treated as domestic goods if they "undergo [a] 'substantial transformation'" in the United States.  *Id.*  However, the agency continued, USDA had been applying the Meat Inspection Act so that imported meat from animals slaughtered abroad *only* needed to be marked with its country of origin through retail sale *if* it was "pre-packaged and labeled" at the time it was imported, so that the meat was "sold to [the] grocer[]" exactly "as [it was] packaged" when it entered the country.  *Id.*  If the imported meat underwent *any* sort of "process[ing]

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 26

in the United States," USDA's "policies and directives" interpreting the Meat Inspection Act allowed the reseller to remove the "country of origin declarations" on the product. *Id.* at 61949. USDA admitted that its Meat Inspection Act regulations allowed more imported meat to be classified as domestic goods than was allowed under the Tariff Act (and, correspondingly, the Meat Inspection Act).

88.   Rather than issue regulations pursuant to the 2002 Farm Bill and also correct its prior Meat Inspection Act regulations that too narrowly implemented the Meat Inspection Act, through final agency action in 2009, USDA issued a single set of new, comprehensive regulations. Those regulations both carried out the 2002 Farm Bill and brought USDA's treatment of imported meat into line with the Meat Inspection Act and the Tariff Act. USDA provided that if U.S. Customs determined an imported item—including beef and pork—needed to be marked with its country of origin under the Tariff Act, USDA would require the item to "retain th[at] origin as determined by [U.S. Customs] … through retail sale." *Id.* at 61949; *see also* 7 C.F.R. § 65.300(f)(2) (2009) (implementing the proposed rule).

89.   In 2012, however, the WTO determined that USDA's requirements "reduce[d] the value" of imported *livestock*, discouraging United States meat packers from purchasing *live* cattle and hogs from Mexican and Canadian producers, in violation of United States trade agreements. Joel L. Greene, Cong.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 27

Research Serv., *Country-of-Origin Labeling for Foods and the WTO Trade Dispute on Meat Labeling*, at i (Mar. 8, 2016) (Exhibit A).

90.     As a result, the WTO authorized monetary sanctions against the United States.  *Id.*

91.     In response, Congress repealed the language in the 2002 Farm Bill. Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, § 759, 129 Stat. 2242, 2284-85 (2016).

92.     The Consolidated Appropriations Act, however, made no changes to the Tariff Act's or the Meat Inspection Act's labeling requirements for imported, beef and pork from animals slaughtered abroad, nor did the WTO's decision address those laws.

93.     Yet, to implement the directive in the Consolidated Appropriations Act, through final agency action, USDA removed "beef and pork muscle cuts and ground beef and pork" from the list of products required to retain their country-of-origin marks or labels through retail sale.  Removal of Mandatory Country of Origin Labeling Requirements for Beef and Pork Muscle Cuts, Ground Beef, and Ground Pork, 81 Fed. Reg. at 10755.

94.     And—despite USDA's earlier acknowledgement that, prior to implementing the 2002 Farm Bill, the agency's Meat Inspection Act regulations conflicted with the Meat Inspection Act's text—in terminating the country-of-

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 28

origin labeling regulations issued following the 2002 Farm Bill, USDA made no effort to fix the conflict between the Meat Inspection Act's regulations and the statute's requirements.

95.    To the contrary, USDA implemented the Consolidated Appropriations Act by reinstituting the same regulations USDA had enforced before the 2002 Farm Bill, thus returning USDA to a state where its Meat Inspection Act regulations conflict with the statute's plain text by failing to enforce the Tariff Act. USDA was directed to undo the expanded labeling requirements that followed the 2002 Farm Bill, which reached imported livestock.  Rather than narrowly carrying out that directive, USDA both removed its labeling requirements for imported livestock *and* abandoned its requirements for labeling imported beef and pork that are independently mandated by the Meat Inspection Act.

96.    Accordingly, the Congressional Research Service has noted the renewed conflict between the Meat Inspection Act regulations and United States trade laws, which the Meat Inspection Act's text requires USDA to enforce. Greene, *supra*, 30-31.

97.    As the Congressional Research Service explains, the purpose of the 2002 Farm Bill was to expand upon the country-of-origin labeling required by the Tariff Act. *Id.* at 30.  However, the 2002 Farm Bill did "not change the requirements of the Tariff Act or the food safety inspection statutes." *Id.*

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 29

98.    The Meat Inspection Act provides "[m]eat and poultry product imports must comply not only with the meat and poultry inspection laws and rules but also with Tariff Act labeling regulations." *Id*. at 31.  However, once "[i]mported bulk products … [have] entered the country," according to USDA's Meat Inspection Act regulations, the imported products are deemed "to be domestic products." *Id.*  This is the case even though, under the Tariff Act, customs officers would not necessarily deem those products to be domestic products.  In other words, the USDA regulations that predated the 2002 Farm Bill and which, through final agency action in 2016, USDA chose to reinstate for beef and pork, allow importers to "avoid the need for labeling" that would be required under United States trade laws. *Id.*  Thus, according to the Congressional Research Service, USDA's revocation of the 2002 Farm Bill's country-of-origin labeling requirements for pork and beef once again created a "potential for conflict" between United States trade laws and USDA's policies. *Id.*

99.    USDA's current implementation of the Meat Inspection Act is unlawful because it fails to implement that statute's requirement that USDA enforce United States trade laws' marking or labeling requirements.

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 30

1

2

**D.    USDA's termination of the regulations that had brought USDA's marking or labeling requirements into compliance with the Meat Inspection Act has significant consequences.**

3

4

5

6

100.    USDA's final agency action terminating regulations that brought its marking or labeling requirements into compliance with Congress' directives has significant impacts on United States cattle and hog producers, as well as United States consumers.

7

8

101.    For instance, in 2016, USDA recorded that nearly 983,414 metric tons of fresh beef from cattle slaughtered abroad was imported into the United States.

9

10

11

12

102.    This includes 194,394 metric tons of fresh beef that came in as "cuts," and another 208,386 metric tons of fresh beef that was imported as "primals & subprimals," *i.e.*, was already broken down into the pieces in which beef is typically sold such as loins or flanks.

13

14

103.    Put another way, in 2016, more than 402,000 metric tons of fresh beef was imported into the United States, which was, at most, sliced after it arrived.

15

16

17

18

19

104.    Therefore, in 2016, there was more than 887 million pounds of fresh beef imported into the United States that the Tariff Act would have required to be labeled with its country of origin all the way to the consumer because the beef did not undergo a substantial transformation once it was imported into the United States.  *See* 19 C.F.R. § 134.1(d).

20

21

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 31

105.    Yet, under its current regulations, USDA allows domestic resellers of that beef to strip the country-of-origin label off that meat and place the imported beef alongside domestic products, with both sets of goods packaged and labeled so as to appear indistinguishable.  9 C.F.R. § 327.18(a).

106.    This places domestic producers at a competitive disadvantage.  It allows meat packers to flood the market with foreign beef that consumers cannot distinguish from domestic beef.  This harms domestic producers' bottom line.

107.    USDA's rules likewise deny consumers information they desire regarding their food.

## V.  CAUSE OF ACTION

108.    Plaintiffs re-allege and incorporate by reference all of the allegations set forth above.

109.    The USDA regulations for the marking or labeling of imported beef and pork are unlawful because they fail to implement the plain language and clear intent of the authorizing statute, the Meat Inspection Act, which requires imported beef and pork comply with the marking or labeling requirements for imported goods established by United States trade laws.  Instead, undermining the express language of Meat Inspection Act, USDA's regulations declare that meat, once imported, can be treated as a domestic good.  Thereby, the regulations allow beef and pork packers and other resellers to sell goods to United States consumers

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 32

without the labels that are required under United States trade laws.  This undermines consumers' ability to know the country of origin where their foreign beef and pork was produced and harms domestic producers.  Agencies are not empowered to legislate and are certainly not empowered to contradict Congress.

110.   Therefore, to the extent they fail to require that imported beef and pork comply with the marks or labels required for such goods under United States trade laws, as mandated by the Meat Inspection Act's plain text, 21 U.S.C. § 620(a), the USDA regulations regarding the marking or labeling of imported beef and pork should be declared unlawful, vacated, and enjoined, *see* 28 U.S.C. §§ 2201-2202; Fed. R. Civ. P. 65.

## VI.  PRAYER FOR RELIEF

Plaintiff requests that the court enter a judgment:

A.   Declaring USDA's regulations regarding the marking or labeling of imported beef and pork unlawful to the extent they fail to require that imported beef and pork comply with the Tariff Act's marking or labeling requirements, as 21 U.S.C. § 620(a) mandates;

B.   Vacating USDA's regulations regarding the marking or labeling of imported beef and pork that fail to require that imported beef and pork comply with the Tariff Act's marking or labeling requirements, as 21 U.S.C. § 620(a) mandates;

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR, AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS OF UNITED STATES MEAT LABELING REGULATIONS - 33

1    C.    Enjoining the Secretary of Agriculture from continuing to implement

2    USDA regulations regarding the marking or labeling of imported beef and pork to

3    the extent those regulations fail to require that imported beef and pork comply with

4    the Tariff Act's marking or labeling requirements, as 21 U.S.C. § 620(a) mandates;

5    D.    To ensure that the public has accurate notice of the requirements of

6    the law, requiring the government to provide public notice, including in the official

7    and online editions of the United States Code and the Code of Federal Regulations,

8    that the challenged aspects of USDA's regulations are unlawful and will not

9    remain in effect;

10    E.    Awarding Plaintiff reasonable attorneys' fees and costs; and

11    F.    Awarding such other relief as may be just and proper.

12    RESPECTFULLY SUBMITTED AND DATED this 19th day of June,

13    2017.

14                          TERRELL MARSHALL LAW GROUP PLLC

15                          By:   /s/ Beth E. Terrell, WSBA #26759
                                  Beth E. Terrell, WSBA #26759
16
                            By:   /s/ Blythe H. Chandler, WSBA #43387
17                                Blythe H. Chandler, WSBA #43387
                                  Attorneys for Plaintiffs
18                                936 North 34th Street, Suite 300
                                  Seattle, Washington  98103-8869
19                                Telephone:  (206) 816-6603
                                  Facsimile:  (206) 319-5450
20                                Email:  bterrell@terrellmarshall.com
                                  Email:  bchandler@terrellmarshall.com
21    COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
      AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
      OF UNITED STATES MEAT LABELING REGULATIONS - 34

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

David S. Muraskin (motion to appear *pro hac vice* pending)
Attorney for Plaintiffs
PUBLIC JUSTICE, P.C.
1620 L Street NW, Suite 630
Washington, DC 20036
Telephone:  (202) 861-5245
Email:  dmuraskin@publicjustice.net

COMPLAINT FOR A DECLARATORY JUDGMENT, VACATUR,
AND INJUNCTIVE RELIEF CONCERNING THE LAWFULNESS
OF UNITED STATES MEAT LABELING REGULATIONS - 35